UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 26-MJ-024 (JRT/ECW)

UNITED STATES OF AMERICA,

       Plaintiff,

    v.

NASRA AHMED,

       Defendant.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR OUTRAGEOUS GOVERNMENT CONDUCT**

The defense has failed to meet the exceptionally high burden of proof required for a showing of outrageous government conduct. There are no facts showing government conduct created, induced, or coerced Ahmed's criminal action. Ahmed has provided no facts to show government conduct with her was so outrageous that it violates fundamental fairness and is shocking to the universal sense of justice. Further, they have made no attempt to indicate Ahmed was not an active and willing participant in the criminal conduct that led to their arrest.

Ahmed makes allegations of a federal invasion and agents terrorizing the populace rather than address the showing she is required to make. (ECF No. 33). A showing that the alleged outrageous conduct is what created, coerced, or induced the actual crime. Even when discussing direct government involvement with the Ahmed, they have not provided one example of

1

government overinvolvement in the crime or that the she was a passive participant.

For these reasons, the United States requests the motion to dismiss and the request for an evidentiary hearing be denied.

## INTRODUCTION

Federal immigration enforcement is a core exercise of the United States' sovereign authority to regulate the entry, presence, and removal of non-citizens. U.S. Const. art. I, § 8; U.S. Const. art. II, § 3; *See Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952); *Arizona v. United States*, 567 U.S. 387, 396–97 (2012); *United States v. Texas*, 143 S. Ct. 1964, 1973–74 (2023).

Multi-agency enforcement operations are a longstanding feature of modern federal law enforcement practice.

"Operation Cross Check" is an ongoing multi-state ICE enforcement initiative to identify, arrest, and remove individuals with criminal records. Since its launch, it has resulted in thousands of arrests and removals. U.S. Immigr. & Customs Enf't, Enforcement and Removal Operations (ERO) Fugitive Operations Program, https://www.ice.gov/identify-and-arrest/fugitive-operations (last visited Apr. 9, 2026).

"Operation Metro Surge" was a coordinated multi-agency law enforcement operation in Minnesota.

"Operation Legend", a DOJ-led violent crime initiative involving the FBI, ATF, DEA, and U.S. Marshals Service, resulted in over 1,000 arrests across multiple jurisdictions. U.S. Dep't of Just., *Attorney General Announces Expansion of Operation Legend*, https://www.justice.gov/opa/pr/attorney-general-announces-expansion-operation-legend-nationwide-initiative-combat-violent (last visited Apr. 9, 2026).

"Operation Broken Heart", conducted through the Internet Crimes Against Children Task Force Program, resulted in approximately 1,700 arrests nationwide through coordinated federal, state, and local enforcement efforts. Off. of Just. Programs, U.S. Dep't of Just., *Nearly 1,700 Suspected Child Sex Predators Arrested During Operation Broken Heart,* https://ojp.gov/news/press-releases (last visited Apr. 9, 2026).

"Operation Community Shield" is a long-running nationwide gang enforcement initiative led by ICE Homeland Security Investigations, that has resulted in the arrest of gang members and transnational criminal organization affiliates across the United States since its inception. U.S. Immigr. & Customs Enf't, *Operation Community Shield*, https://www.ice.gov/features/community-shield (last visited Apr. 9, 2026).

3

Taken together, these operations demonstrate that large-scale, coordinated enforcement operations are a routine feature of modern federal law enforcement practice.

## I.    THE LAW

Dismissal of a criminal case based on alleged outrageous government conduct is an extraordinary remedy that applies only in the rarest of circumstances. *See United States v. Combs*, 827 F.3d 790, 794 (8th Cir. 2016) (citing *United States v. Russell*, 411 U.S. 423, 432 (1973) and *United States v. King*, 351 F.3d 859, 867 (8th Cir. 2003)).

Ultimately, to prove outrageous government conduct, the defendant must show 1) excessive government involvement in creating the crime; or 2) significant government coercion to induce the crime. *United States v. King*, 2021 WL 4505958 19-cr-257-WJM (D. Colorado 2021) (where the underlying charge was 18 U.S.C. § 111(a)(1), (b)).

The Eighth Circuit has emphasized that this doctrine is "reserved for conduct that falls within the narrow band of the most intolerable government conduct." *King*, 351 F.3d at 867 (cleaned up). Dismissal is appropriate only where law enforcement conduct violates "that fundamental fairness, shocking to the universal sense of justice, mandated by the Due Process Clause." *Combs*,

827 F.3d at 794 (citing Russell, 411 U.S. at 432). Because dismissal is such a drastic remedy, the defendant bears a heavy burden. *King*, 351 F.3d at 867.

"Where the court finds that the defendant is an active, willing participant in the criminal conduct that leads to his arrest, we will not find outrageous government conduct." *United States v. Asibor*, 109 F.3d 1023, 1039 (5th Cir. 1997). "Furthermore, in order to avail himself of the outrageous conduct defense, the defendant must show government overinvolvement combined with a passive role by the defendant." *Id.*

## II.    THE CONDUCT WAS NOT OUTRAGEOUS.

Here, Ahmed asks this court to bypass the established requirement that she proves excessive government involvement in the creation of the crime or government coercion to induce the crime. *King*, 351 F.3d at 1. The allegations of outrageous government conduct lack any connection to governmental engineering or coercion of criminal activity, even if taking the Ahmed's recitation of facts as true. *Id.* at 2.

A. Facts

On January 14, 2026, ERO conducted an enforcement operation in a residential area. The officers conducted a knock and talk at one residence, but no one answered the door. While officers were in the parking lot, they encountered Ahmed and ran a record check. After the record checks were

5

complete, the officers began to walk away when Ahmed started yelling obscenities at them. Officers then saw Ahmed throw a raw egg at one of the officers. The egg struck an officer and broke open, covering him in yolk and egg whites. Officers began to arrest Ahmed, and during the arrest, Ahmed spit at multiple officers.

### B. Analysis

The burden rests with the defense and as such the Court must evaluate what, if any, showing they have made to meet their burden. The defense spends the first part of their motion voicing their disagreement with immigration operations in this district as a whole. This focus on broad overarching government conduct, not specific to Ahmed or the crime she committed, is not on par with the focus in *Twigg*, *Combs*, *Asibor*, *Hunt*, and *Valona*. While the underlying facts in each of these cases is different, when analyzing the claims of outrageous government conduct the courts looked at government conduct involving that particular defendant. Even *Mosley*, which defense cites to, makes clear for a defense of outrageous conduct the government's conduct, with respect to that indictment, must be outrageous. United States v. Mosley, 965 F.2d 906, 910 (10th Cir. 1992). Therefore, to even begin to evaluate whether the defense met their burden the Court must ensure its focus is on government conduct as it pertains to this defendant and this crime.

In this case, the only outrageous conduct alleged by the defense involving Ahmed is a pursuit, detention, and arrest during which she alleges the officers took her identification. Even if the government conceded Ahmed's recitation of facts, Ahmed has not established anything amounting to outrageous government conduct. Officers pursuing, detaining, and arresting an individual is not close to conscience-shocking behavior that violates fundamental fairness. Officers were at the scene conducting law enforcement operations, and their conduct fell within "[the] permissible law enforcement tradition." *See Combs*, 827 F. 3d at 795.

In *Twigg*, outrageous government conduct was found where the DEA, through an informant, orchestrated the entire crime: they proposed the meth lab, provided the chemicals, and even funded the operation. *United States v. Twigg*, 588 F.2d 375-76 (3d Cir. 1978). Because Twigg was entirely subordinate and lacked technical knowledge, the court found the government conduct went too far. *Id.* at 382. This is unlike the present case. Here, Ahmed acted entirely of her own accord. Ahmed was not so subordinate to the government that her actions cannot be attributed to herself. Nor did she lack any technical knowledge needed to commit the crime, which the government provided her with. The officers did not provide her with the egg, they did not teach her how to throw, and they did not teach her to spit. Officers stopping Ahmed and running a records check does not rise to *Twigg* levels of government overreach.

7

The gap between any conduct in this case and what it takes to meet the burden of outrageous government conduct becomes even more clear when looking at a case like *Hunt*, which the defense also cites. In *Hunt*, the government provided the defendant with over two kilograms of a chemical necessary for the production of methamphetamine. When the defendant argued outrageous government conduct, the Eighth Circuit found that "participating in the illegal enterprise" and "contribut[ing] something of value to the conspiracy" did not violate fundamental fairness or shock the universal sense of justice meet. *United States v. Hunt*, 171 F.3d 1192, 1195 (8th Cir. 1999). Therefore, the defendant could not meet his burden.

To further highlight just how far Ahmed is from meeting her burden, consider *United States v. Simpson*. In *Simpson*, the FBI used an informant who had a sexual past with the defendant. *United States v. Simpson*, 813 F.2d 1462, 1465 (9th Cir. 1987). During the investigation, the informant continued to have sex with the defendant to deceive him into believing she was his friend. *Id.* Even having sex with the defendant was not enough for the Ninth Circuit to find outrageous government conduct. Holding "that the government's conduct was not so shocking as to violate the due process clause." *Id.*

Even if Ahmed's allegations were true, the conduct in this case is so far from outrageous that Ahmed has objectively not met her burden. None of the claims she puts forth establishes the government created the crime for which

8

she was charged. She makes no argument that the government coerced or induced her actions. Her subjective disagreement with how she was treated is not a valid ground to dismiss the charge against her. Dismissal based on outrageous government conduct is an extraordinary remedy that applies only in the rarest of circumstances. This is not one of those extremely rare cases.

## III.    AHMED HAS NOT SHOWN SHE WAS A PASSIVE PARTICIPANT IN THE CRIME.

Even if the government conceded all the allegations in the Ahmed's motion the Court should still deny the motion.

The Fifth Circuit has long held that when defense of outrageous government conduct "a defendant who actively participates in the crime may not avail himself of the defense." *United States v. Arteaga*, 807 F.2d 424, 427 (5th Cir. 1986). In *Asibor,* the Fifth Circuit affirmed its decision in *Arteaga*, and further articulated the need for the defendant to show not only government overinvolvement in the but also a passive role by the defendant. *United States v. Asibor*, 109 F.3d 1023, 1039 (5th Cir. 1997). In *Asibor,* government agents both supplied drugs to the defendant and bought them from the defendant. *Id.* Still, the Fifth Circuit found that the government was not overinvolved and the defendant did not have a passive role. *Id*. In this case, Ahmed threw an egg at and spit at officers, and she brought the egg herself.  She played not just an active role, but the only role in committing this crime, and there has been no

9

showing otherwise. Therefore, even if the court finds the government conduct outrageous, Ahmed's actions bar her from asserting such defense.

## CONCLUSION

The only burden before the court on this motion rests solely with the defense. Ahmed not only failed to meet her burden, but her own actions in committing this crime establish the basis for barring her from asserting this defense.

[INTENTIONALLY LEFT BLANK]

Therefore, based upon the reasons stated above, the United States respectfully requests that this Court deny the motion and the request for an evidentiary hearing.

Dated: April 17, 2026

Respectfully Submitted,

DANIEL N. ROSEN
United States Attorney

*s/Robert G. Tucker III*
BY: ROBERT G. TUCKER III
Special Assistant U.S. Attorney
Bar # 24136128TX
Cell: 202-230-4022
Email: robert.tucker@usdoj.gov